# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-17-00296-CR

**Robert Isreal, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 450TH JUDICIAL DISTRICT
NO. D-1-DC-16-904098, THE HONORABLE BRAD URRUTIA, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

We withdraw the memorandum opinion and judgment dated August 8, 2018, substitute the following memorandum opinion and judgment in their place, and deny the State's motion for rehearing.

A jury convicted appellant Robert Isreal of three counts of aggravated family violence assault—aggravated family violence assault causing serious bodily injury with a deadly weapon, *see* Tex. Penal Code § 22.02(b)(1), aggravated family violence assault with a deadly weapon, *see id.* § 22.02(a)(2), and aggravated family violence assault causing serious bodily injury, *see id.* § 22.02(a)(1)—all arising out of a single assaultive incident involving his former girlfriend. The jury assessed appellant's punishment, enhanced pursuant to the repeat offender provisions of the Penal

Code, at confinement for 50 years in the Texas Department of Criminal Justice and an $8,000 fine, *see id.* § 12.42(c)(1), confinement for five years in the Texas Department of Criminal Justice, *see id.* §§ 12.42(b), 12.32, and confinement for five years in the Texas Department of Criminal Justice, *see id.* §§ 12.42(b), 12.32, respectively. The trial court ordered the sentences to be served concurrently. *See id.* § 3.03(a). On appeal, appellant complains about error in the jury charge and asserts a double jeopardy violation. We affirm in part and vacate in part.

## BACKGROUND[1]

The jury heard evidence that appellant and Stacey Smith were involved in a romantic relationship for several years. They lived together for two years, but their relationship was "bumpy" at times, and appellant moved out when he began a relationship with another woman. Evidence at trial reflected that the incident forming the basis of the instant offenses occurred approximately two months after appellant moved out when the couple was considering getting back together.

Smith testified that even after she and appellant broke up and he moved out, and although both of them were involved in other relationships, she and appellant would meet once or twice a week to have sex at the horse pen where appellant and his brother kept horses. Smith recounted that on March 3, 2015, she met appellant at the horse pen after she got off work, and they had sex in his truck. She explained that after their sexual encounter, she went back to her car. She

---

[1] Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we provide only a general overview of the facts of the case here. We provide additional facts in the opinion as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4. The facts recited are taken from the testimony and other evidence presented at trial.

was sitting in the driver's seat and appellant was standing by the open car door when appellant asked her to fix something on his cell phone. She agreed, and he retrieved the phone from his truck and gave it to her. Smith testified that she saw a text from another woman on appellant's phone, became angry, and slapped appellant. Smith recounted that appellant then grabbed her wrist and cut it with his pocket knife. Next, he grabbed her by her hair and pulled her from the car. According to Smith, appellant dragged her to the back of her car, opened the trunk, and threatened to kill her. Smith explained that she lost consciousness and woke up the next day in the hospital.

The evidence at trial reflected that appellant left the scene after calling his brother. Appellant's brother responded to the horse pen and called 911 when he found Smith "breathing but in bad shape." Paramedics were dispatched to the location and found Smith "profoundly unconscious" and unresponsive to any stimuli. One of the paramedics testified that Smith had "a lot of facial trauma" indicative of being struck multiple times. The paramedics "declared a trauma activation," which involved transporting Smith to a trauma center as soon as possible, ideally within ten minutes, due to her severe condition. Smith was taken by ambulance to the hospital, where she remained for 17 days.

Testimony from the treating emergency room physician showed that upon arrival at the hospital, Smith was unable to verbally communicate due to her injuries. A CT scan of Smith's head showed "extensive scalp hematomas"; a CT scan of her facial area showed "extensive soft tissue swelling and hematoma." The ER doctor concluded that Smith's injuries were severe enough that she needed to be admitted to the hospital; she did not meet the criteria for discharge because she could not complete the basic daily activities of living: she could not talk, eat, swallow, or walk. In

addition, her eyes were swollen shut and she could not see. Further evidence at trial reflected that Smith received speech therapy, occupational therapy, and physical therapy to address the deficits caused by her injuries and to regain functioning for daily life. It was three days before Smith could swallow, five days before she could speak clearly enough to be understood, and seven days before she could open her eyes. An MRI done ten days after Smith was admitted to the hospital still showed a "frontal scalp hematoma and some edema (swelling) in the subcutaneous soft tissues of the neck." Testimony from the ER doctor reflected that Smith's injuries, particularly her eye injuries, were consistent with blunt force trauma—most likely from multiple blows—and strangulation.

Smith testified about her condition upon her release from the hospital and the long-term impact of her injuries: she could not drive; she had to use a walker for at least two months and then had to use a cane; and she was unable to return to work for six months. At the time of trial, nearly two years after the assault, Smith still had problems with her balance, bladder control issues, and memory difficulties. She also said that she could still feel a knot on her forehead and that she suffered from migraines, which she did not suffer from before the assault.

Following the attack on Smith, police developed appellant as a suspect. During the investigation, appellant met with a detective from the Travis County Sheriff's Office on two occasions. Both interviews were recorded, and the recordings of the interviews were admitted during trial. In the first interview, appellant admitted that he assaulted Smith but gave only minimal vague details, indicating that he struck Smith, though he said that he did not know how many times, and that he grabbed Smith by the top of her head and pulled her from her car. In the second interview,

4

when confronted with the severity of Smith's injuries (which the detective discovered when he visited Smith in the hospital after the first interview with appellant), appellant said that after Smith slapped him he "just started punching and punching and punching" and then grabbed Smith around her neck and shook her. As he described this, appellant demonstrated the grabbing and strangling with his hands. Appellant said that when he released Smith, "she hit the ground and didn't move."

## DISCUSSION

Appellant raises two points of error on appeal. First, he claims that error in the jury charge deprived him of a fair and impartial trial. Second, appellant asserts that his convictions and punishment for all three offenses violate the prohibition against double jeopardy.

### Jury Charge Error

In his first point of error, appellant asserts that the trial court erred by failing to properly tailor the definition of the culpable mental states in the jury charge to the applicable conduct element of the offenses.

We review alleged jury charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). The degree of harm required for reversal depends on whether the jury charge error was preserved in the trial court. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (setting forth procedure for appellate review of claim of jury charge error). If the jury charge error

5

has not been properly preserved by an objection or request for instruction, as it was not here, the error must be "fundamental" and requires reversal only if it was "so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Marshall*, 479 S.W.3d at 843; *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Almanza*, 686 S.W.2d at 171.

A trial court is statutorily obligated to instruct the jury on the "law applicable to the case." *See* Tex. Code Crim. Proc. art. 36.14; *Arteaga*, 521 S.W.3d at 334. Each statutory definition that affects the meaning of an element of the offense must be communicated to the jury. *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009); *Arline v. State*, 721 S.W.2d 348, 352 n.4 (Tex. Crim. App. 1986). The jury charge should tell the jury what law applies and how it applies to the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). The trial court's duty to instruct the jury on the "law applicable to the case" exists even when defense counsel fails to object to inclusions or exclusions in the charge. *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 486 (Tex. Crim. App. 2011). The trial court is "ultimately responsible for the accuracy of the jury charge and accompanying instructions." *Vega*, 394 S.W.3d at 518 (quoting *Delgado*, 235 S.W.3d at 249); *Taylor*, 332 S.W.3d at 488.

The Penal Code delineates three "conduct elements" that can be involved in an offense: (1) the nature of the conduct, (2) the result of the conduct, and (3) the circumstances surrounding the conduct. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989); *see* Tex. Penal Code § 6.03. The statutory definitions of the culpable mental state in a jury charge must be tailored to the conduct elements of the offense. *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015); *Cook v. State*, 884 S.W.2d 485, 487 (Tex. Crim. App. 1994). The gravamen of the

6

offense is utilized to determine which conduct elements should be included in the culpable mental state language of the jury charge. *Price*, 457 S.W.3d at 441. If the gravamen of the offense is the result of conduct, the jury charge definitions of culpable mental states should be tailored to the result of the conduct. *Id.*

The gravamen of the offense of aggravated assault is the specific type of assault defined in Section 22.01 of the Texas Penal Code. *Landrian v. State*, 268 S.W.3d 532, 538 (Tex. Crim. App. 2008); *see* Tex. Penal Code § 22.01 (defining assault as either intentionally, knowingly or recklessly causing bodily injury, or intentionally or knowingly threatening another with imminent bodily injury); *see also Shelby v. State*, 448 S.W.3d 431, 438 (Tex. Crim. App. 2014) ("The gravamen of aggravated assault, therefore, is either causing bodily injury or threatening imminent bodily injury, depending on which theory has been pleaded in the charging instrument."). Assault causing bodily injury is a result-oriented assaultive offense. *Price*, 457 S.W.3d at 442; *Landrian*, 268 S.W.3d at 536. Therefore, aggravated assault with the underlying crime of assault causing bodily injury is a result-oriented offense. *Landrian*, 268 S.W.3d at 540; *see Price*, 457 S.W.3d at 443 (concluding that family violence assault is result-of-conduct offense).

In this case, the abstract portion of the jury charge included the following definitions regarding the culpable mental states "intentionally," "knowingly," and "recklessly":

> A person acts intentionally, or with intent, with respect *to the nature of his conduct or* to a result of his conduct when it is his conscious objective or desire *to engage in the conduct or* cause the result.
>
> *A person acts knowingly or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.* A person acts knowingly, or with

7

knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

A person acts recklessly, or is reckless, with respect to *circumstances surrounding his conduct or* the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that *the circumstances exist or* the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the defendant's standpoint.

(Emphases added.) As the emphasized portions show, the trial court's definitions of the culpable mental states were not tailored to the result of the conduct but instead included language regarding the nature of the conduct and language regarding the circumstances surrounding the conduct.

A trial court errs when it fails to limit the definitions of the culpable mental states to the conduct element or elements involved in the particular offense. *Price*, 457 S.W.3d at 441; *Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995); *Cook*, 884 S.W.2d at 491. Accordingly, the trial court here erred in failing to tailor the definitions of the culpable mental states to the result of the conduct.

Having found error in the jury charge, we must next consider whether appellant was harmed by the error. Appellant concedes that he did not object at trial to the non-tailored definitions of the culpable mental states in the jury charge. Thus, the jury charge error was not preserved, and reversal is required only if the error was "fundamental" in that it was "so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Marshall*, 479 S.W.3d at 843; *Villarreal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171; *see State v. Ambrose*, 487 S.W.3d 587,

8

595 (Tex. Crim. App. 2016) (reaffirming that under precedent of Court of Criminal Appeals, unpreserved jury charge error does not require reversal unless error causes "egregious harm").

Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Arteaga*, 521 S.W.3d at 338; *Marshall*, 479 S.W.3d at 843; *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015). "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Villarreal*, 453 S.W.3d at 433 (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)); *see Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013) ("[Egregious harm] is a difficult standard to meet and requires a showing that the defendants were deprived of a fair and impartial trial."). We will not reverse a conviction unless the defendant has suffered "actual rather than theoretical harm." *Villarreal*, 453 S.W.3d at 433; *see Marshall*, 479 S.W.3d at 843 ("[C]ourts are required to examine the relevant portions of the entire record to determine whether appellant suffered actual harm, as opposed to theoretical harm, as a result of the error."); *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011) ("An egregious harm determination must be based on a finding of actual rather than theoretical harm.").

In examining the record to determine whether jury charge error has resulted in egregious harm, we consider: (1) the entirety of the jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the trial record as a whole. *Arteaga*, 521 S.W.3d at 338; *Marshall*, 479 S.W.3d at 843; *Villarreal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171. The

9

analysis is "fact specific and is done on a 'case-by-case basis.'" *Arrington*, 451 S.W.3d at 840

(quoting *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013)).

*Entirety of the Jury Charge*

In considering the jury charge as a whole, when the error involves a misstatement of

the required culpable mental state, we "may consider the degree, if any, to which the culpable mental

states were limited by the application portions of the jury charge." *Hughes v. State*, 897 S.W.2d 285,

296 (Tex. Crim. App. 1994); *Cook*, 884 S.W.2d at 492 n.6. In this case, although the trial court gave

incorrect definitions of the culpable mental states in the abstract portion of the charge, the court

properly applied the law to the factual context and limited the culpable mental states to the result of

appellant's conduct in the application paragraphs. Regarding Count 1, the trial court instructed the

jury as follows:

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, Robert Isreal, on or about the 3rd day of March, 2015, in the County of Travis and State of Texas, as alleged in the indictment, did then and there intentionally or knowingly or recklessly cause serious bodily injury to Stacy Smith, a member of the said Robert Isreal's family and household or with whom Robert Isreal has had a dating relationship, by striking the said Stacy Smith with Robert Isreal's hand; or by seizing Stacy Smith on and about her throat and neck with Robert Isreal's hands; or by shaking Stacy Smith on and about her throat and neck and head with Robert Isreal's hands; or by striking the head of Stacy Smith on an object, to-wit: the ground; or by seizing Stacy Smith on and about the head and hair with Robert Isreal's hand and causing her head to strike an object, to-wit: the ground; or by dragging Stacy Smith, causing her body and legs to contact the ground; And you further believe from the evidence beyond a reasonable doubt that the defendant, Robert Isreal, did then and there use a deadly weapon, to-wit: his hands or the ground, which in the manner of their use or intended use were capable of causing death or serious bodily injury during the commission of said offense, then you will find the defendant guilty of the offense of aggravated

10

assault-family violence, as alleged in Count I of the indictment, and so say by your verdict and proceed to consider Paragraph VIII and Count II.

Thus, the jury was instructed that it could convict appellant of aggravated family violence assault in Count 1 only if it found that he had intentionally, knowingly, or recklessly caused the result—i.e., serious bodily injury to Smith. This instruction is consistent with the statutorily prohibited conduct. *See* Tex. Penal Code §§ 22.01(a)(1), 22.02(b)(1).

Similarly, the jury was instructed regarding Count 2 as follows:

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, Robert Isreal, on or about the 3rd day of March, 2015, in the County of Travis and State of Texas, as alleged in the indictment, did then and there intentionally or knowingly or recklessly cause bodily injury to Stacy Smith, a member of the said Robert Isreal's family and household or with whom Robert Isreal has had a dating relationship, by striking the said Stacy Smith with Robert Isreal's hand; or by seizing Stacy Smith on and about her throat and neck with Robert Isreal's hands; or by shaking Stacy Smith on and about her throat and neck and head with Robert Isreal's hands; or by striking the head of Stacy Smith on an object, to-wit: the ground; or by seizing Stacy Smith on and about the head and hair with Robert Isreal's hand and causing her head to strike an object, to-wit: the ground; or by dragging Stacy Smith, causing her body and legs to contact the asphalt;

And you further believe from the evidence beyond a reasonable doubt that the defendant, Robert Isreal, did then and there use a deadly weapon, to-wit: his hands or the ground, which in the manner of their use or intended use were capable of causing death or serious bodily injury during the commission of said offense, then you will find the defendant guilty of the offense of aggravated assault-family violence, as alleged in Count II of the indictment, and so say by your verdict and proceed to consider Paragraph X and Count III.

So, the jury was instructed that it could convict appellant of aggravated family violence assault in Count 2 only if it found that he had intentionally, knowingly, or recklessly caused the result—i.e.,

11

bodily injury to Smith. As with Count 1, this instruction is consistent with the statutorily prohibited

conduct. *See id.* §§ 22.01(a)(1), 22.02(a)(2).

Likewise, the trial court instructed the jury regarding Count 3 as follows:

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, Robert Isreal, on or about the 3rd day of March, 2015, in the County of Travis and State of Texas, as alleged in the indictment, did then and there intentionally or knowingly or recklessly cause serious bodily injury to Stacy Smith, a member of the said Robert Isreal's family and household or with whom Robert Isreal has had a dating relationship, by striking the said Stacy Smith with Robert Isreal's hand; or by seizing Stacy Smith on and about her throat and neck with Robert Isreal's hands; or by strangling Stacy Smith on and about her throat and neck with Robert Isreal's hands; or by shaking Stacy Smith on and about her throat and neck and head with Robert Isreal's hands; or by striking the head of Stacy Smith on an object, to-wit: the asphalt; or by seizing Stacy Smith on and about the head and hair with Robert Isreal's hand and causing her head to strike an object, to-wit: the ground; or by dragging Stacy Smith, causing her body and legs to contact the ground, then you will find the defendant guilty of the offense of aggravated assault-family violence, as alleged in Count III of the indictment, and so say by your verdict and proceed to consider Paragraph XII.

Therefore, the jury was instructed that it could convict appellant of aggravated family violence

assault in Count 3 only if it found that he had intentionally, knowingly, or recklessly caused the

result—i.e., serious bodily injury to Smith. As with Counts 1 and 2, this instruction is consistent

with the statutorily prohibited conduct. *See id.* §§ 22.01(a)(1), 22.02(a)(1).

We also note that for each of the three counts, the jury was instructed regarding the

lesser included offense of family violence assault causing bodily injury, *see id.* § 22.01(a)(1), with

the following paragraph:

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, Robert Isreal, on or about the

12

3rd day of March, 2015, in the County of Travis and State of Texas, as alleged in the indictment, did then and there intentionally or knowingly or recklessly cause bodily injury to Stacy Smith, a member of the said Robert Isreal's family and household or with whom Robert Isreal has had a dating relationship, by striking the said Stacy Smith with Robert Isreal's hand; or by seizing Stacy Smith on and about her throat and neck with Robert Isreal's hands; or by shaking Stacy Smith on and about her throat and neck and head with Robert Isreal's hands; or by striking the head of Stacy Smith on an object, to-wit: the ground; or by seizing Stacy Smith on and about the head and hair with Robert Isreal's hand and causing her head to strike an object, to-wit: the ground; or by dragging Stacy Smith, causing her body and legs to contact the ground; then you will find the defendant guilty of the offense of assault and so say by your verdict, but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict not guilty and proceed to Paragraph VIII.

Thus, even concerning the lesser included offense, the jury was instructed that it could convict appellant of the lesser included offense of family violence assault for each of the counts only if it found that he had intentionally, knowingly, or recklessly caused the result—i.e., bodily injury to Smith. As with the instructions for the greater offenses, this instruction is consistent with the statutorily prohibited conduct of the lesser included offense of family violence assault causing bodily injury. *See id.* § 22.01(a)(1).

We presume that the jury followed the instructions given. *See Miles v. State*, 204 S.W.3d 822, 828 (Tex. Crim. App. 2006); *Luquis v. State*, 72 S.W.3d 355, 367 (Tex. Crim. App. 2002); *Colburn v. State*, 966 S.W.2d 511, 519–20 (Tex. Crim. App. 1998); *Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996). For that reason, when the application paragraph of the jury charge correctly instructs the jury on the law applicable to the case, error in the abstract instruction is not egregious. *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *Gilbert v. State*, 494 S.W.3d 758, 768 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *Kuhn v. State*,

13

393 S.W.3d 519, 529–30 (Tex. App.—Austin 2013, pet. ref'd); *see Patrick*, 906 S.W.2d at 493 ("We conclude that because the facts, as applied to the law in the application paragraph, pointed the jury to the appropriate portion of the definitions, no harm resulted from the court's failure to limit the definitions of culpable mental states to proving the conduct element of the underlying offense."); *Hughes*, 897 S.W.2d at 296 ("Although the definitions of 'intentionally' and 'knowingly' indiscriminately set forth the three alternative conduct elements, when those terms are viewed in their factual context, it becomes apparent which conduct element applies to which element of the offense."). Accordingly, because each of the application paragraphs of the jury charge correctly applied the culpable mental states to the result of the conduct of the alleged offenses, we conclude that consideration of the entirety of the jury charge weighs against a finding of egregious harm.

*State of the Evidence*

The second factor requires us to review the state of the evidence, including the contested issues and weight of probative evidence. *Villarreal*, 453 S.W.3d at 433. Under this factor, "we look to the state of the evidence to determine whether the evidence made it more or less likely that the jury charge caused appellant actual harm." *Arrington*, 451 S.W.3d at 841.

As summarized previously in this opinion, Smith testified about appellant's attack on her and the long-term impact of her injuries. Although her description of the incident was limited due to the fact that she lost consciousness, the medical evidence at trial—including the testimony of the paramedic and the ER doctor as well as Smith's medical records—established the injuries Smith sustained, the severity of those injuries, and the mechanism of how the injuries were likely inflicted—blunt force trauma from multiple blows and strangulation. This evidence was

14

corroborated by photographs depicting Smith's injuries and her condition after the assault and by the investigating detective's testimony about his observations of Smith in the hospital. In addition, appellant's statements to the detective revealed how he inflicted the injuries to Smith. His description was consistent with the testimony given by the medical experts about the likely mechanism of injury.

The record reflects that the primary contested issue at trial was not whether appellant acted with the requisite culpable mental state but whether appellant used a deadly weapon and whether Smith suffered serious bodily injury. Appellant's defense was not that he had inadvertently or accidentally beaten and strangled Smith or that he lacked the requisite mental state to commit the charged offenses. Instead, appellant's theory was that, even though Smith was hospitalized for 17 days, required multiple therapies to regain daily functioning, had prolonged deficits after release from the hospital, and was unable to work for six months, she did not suffer "protracted loss." Thus, appellant maintained, the evidence failed to demonstrate serious bodily injury and, therefore, it likewise failed to show his use of a deadly weapon. Given the disputed elements, throughout the trial the parties focused on the nature and severity of Smith's injuries, not on whether appellant possessed the culpable mental state when he inflicted the injuries. Appellant never indicated that he lacked the requisite culpable mental state to commit the charged offenses, nor did any evidence raise this inference. After reviewing the evidence and the contested issues at trial, we conclude that the state of the evidence weighs against a finding of egregious harm.

*Arguments of Counsel*

Under this factor, we consider whether any statements made during the trial by the prosecutor, the defense counsel, or the trial court may have exacerbated or ameliorated the error in the jury charge. *Arrington*, 451 S.W.3d at 844.

Regarding the arguments of counsel, the determination of whether Smith suffered serious bodily injury and whether appellant used a deadly weapon hinged on the evidence at trial, particularly the medical evidence, about Smith's injuries and their long-term impact on Smith. Accordingly, the parties focused on those issues and the related evidence in their closing arguments. Both sides' arguments focused on whether the evidence established that appellant caused serious bodily injury to Smith and, relatedly, whether it showed that appellant used a deadly weapon.

Appellant cites to comments by the prosecutor that, according to appellant, assert that the culpable mental state related to the conduct (the beating and strangling) not the result (Smith's injuries). However, taken in context, the prosecutor's remarks address whether the evidence demonstrated serious bodily injury—and thus relate to the result. The prosecutor noted the deliberate, severe, and violent nature of appellant's conduct in order to show the "substantial risk of death" aspect of serious bodily injury. The prosecutor's comments about appellant's conduct, in the context of discussing the element of serious bodily injury, posited that because appellant intentionally and knowingly—that is, deliberately—engaged in such brutal acts and violent conduct, appellant necessarily had the culpable mental state to inflict serious bodily injury. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) ("Intent may also be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant.").

16

Moreover, in the State's rebuttal closing argument, the prosecutor explicitly addressed the evidence showing that appellant had the requisite mental state associated with the result of injuring Smith. The prosecutor argued that the evidence demonstrated appellant's intent to cause Smith's death, which would necessarily constitute evidence demonstrating that appellant had the culpable mental state to cause serious bodily injury—"bodily injury that creates a substantial risk of death or that causes death," *see* Tex. Penal Code § 1.07(46)—to Smith.[2]

---

[2] During the State's rebuttal closing argument, the prosecutor made repeated statements that the evidence showed appellant's intent to cause not simply serious bodily injury but death:

> Folks, make no mistake. This defendant as he's dragging Stacy Smith from the driver's side of that vehicle to the rear of that vehicle, as he states to her I'm going to kill you, bitch, he meant every word of that. That's what he was going to do, folks. He wasn't going to cause serious bodily injury. He was going to kill her. And Stacy Smith is one of the luckiest persons on this earth right now because she survived. She survived. So this is not just about SBI. No, this is about this defendant truly wanting [to] kill her.
> . . . Because you have a mountain of evidence about what this defendant's true intention was. It was to kill. It was to kill, folks.
>
> . . . .
>
> . . . His true intent was to cause death, not SBI. To kill her.
>
> . . . .
>
> . . . No, folks, again, he wanted to kill her and he was going to kill her.
>
> . . . .
>
> . . . Again, there was strangulation here, folks. There was an intent to kill.
>
> . . . .
>
> [T]he pictures are bad. And they speak volumes of his intent to kill. Because serious bodily injury is just that, bodily injury that can result in death

17

Thus, although the State discussed the *mens rea* element, the prosecutor did not highlight or rely on the erroneous jury charge instruction but instead focused on the two elements in dispute—the degree of injury to Smith and appellant's use of a deadly weapon—demonstrated by the evidence, which related to the result—serious bodily injury to Smith.

In sum, we perceive nothing in the closing arguments, or other statements by the parties or the trial court during trial, to indicate that appellant was egregiously harmed by the charge error. The arguments of counsel weigh against a finding of egregious harm.

---

as well. And that's what he intended to do, folks. But look at this photograph. (Discussion of photograph). No, folks, he intended to kill her that day.

. . . [W]hen he texted his brother, you want to know what his true intent was, folks? This is the text from this defendant to his brother that night. I'm sorry, man. I just killed this bitch at the horse pen.

No, folks. You see it on video, that anger still raging with him about Stacy Smith. You see it in the medical records. You've heard it from the doctor, from the EMS folks. And now you see also what he truly thought in his mind he had done, that he accomplished what he told Stacy as he's dragging her to the back, I'm going to kill you, bitch. And he tells his brother, hey, man, I'm sorry. I just killed this bitch. No, folks, this is more than just SBI. This is the intent to want to kill.

. . . .

. . . [H]e was able to achieve the one goal he really wanted to get there but fell short and that is to kill her.

. . . .

. . . Because what he intended to do, folks, was more than SBI. He was going to kill Stacy Smith.

18

*Other Relevant Information in the Record*

As to the fourth factor, our review of the record has disclosed no other relevant information that requires our consideration in the egregious harm analysis.

*Conclusion Regarding Harm*

On this record, in view of the jury charge submitted, the state of the evidence—the overwhelming evidence regarding appellant's brutal beating and violent strangulation of Smith, the severity of Smith's injuries, and the long-term impact of those injuries—and the arguments of counsel, we cannot conclude that the jury charge error affected the very basis of the case, deprived appellant of a valuable right, or vitally affected the defensive theory. *See, e.g.*, *Jones v. State*, 229 S.W.3d 489, 494 (Tex. App.—Texarkana 2007, no pet.) ("[T]he intent of [appellant] in touching [the child victim], while it was a part of the State's required proof, was not a contested issue and consequently [appellant] could not be egregiously harmed by the definition of the intentional and knowing state of mind."); *Saldivar v. State*, 783 S.W.2d 265, 268 (Tex. App.—Corpus Christi 1989, no pet.) ("Where no defense is presented which would directly affect an assessment of mental culpability, there is no harm in submitting erroneous definitions of 'intentionally' and 'knowingly.'"). Accordingly, after reviewing the record and considering the relevant factors, we hold that the erroneous definitions of the culpable mental states in the abstract portion of the jury charge did not egregiously harm appellant. We overrule appellant's first point of error.

**Double Jeopardy**

In his second point of error, appellant argues that two of his three convictions for aggravated family violence assault violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. He contends that because all three convictions were based on "one discrete event" against the same victim, the offenses for which he was convicted in Counts 2 and 3 were lesser included offenses of the Count 1 offense. Thus, he maintains, he was impermissibly subjected to multiple punishments for the same offense.

Appellant did not raise his double jeopardy claim at trial. Accordingly, he may raise it for the first time on appeal only if the undisputed facts show that (1) the violation is clearly apparent on the face of the record, and (2) enforcement of the usual rules of procedural default serves no legitimate state interest. *See Ex parte Denton*, 399 S.W.3d 540, 544 (Tex. Crim. App. 2013); *Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006); *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000). A double jeopardy claim is apparent on the face of the trial record if resolution of the claim does not require further proceedings for the purpose of introducing additional evidence in support of the double jeopardy claim. *Denton*, 399 S.W.3d at 544; *Ex parte Knipp*, 236 S.W.3d 214, 216, n.3 (Tex. Crim. App. 2007).

In this case, there is no need for expansion of the record because the record contains all of the information needed to determine whether appellant's double jeopardy protections were violated. *See Denton*, 399 S.W.3d at 544–45. In addition, because all three convictions arise out of the same trial, enforcement of the usual rules of procedural default would serve no legitimate state interest. *See Shaffer v. State*, 477 S.W.2d 873, 876 (Tex. Crim. App. 1971) (enforcement of rules

of procedural default serves no state interest when "the two convictions were in the same court, on the same day, before the same judge, and were based on the same evidence"); *Johnson v. State*, 208 S.W.3d 478, 510 (Tex. App.—Austin 2006, pet. ref'd) (because both convictions arose out of same trial, enforcement of usual rules of procedural default would serve no legitimate state interest); *see also Denton*, 399 S.W.3d at 545 ("While the state may have an interest in maintaining the finality of a conviction, we perceive no legitimate interest in maintaining a conviction when it is clear on the face of the record that the conviction was obtained in contravention of constitutional double-jeopardy protections.").

Relevant here, the Fifth Amendment's Double Jeopardy Clause forbids multiple punishments for the same offense in a single prosecution. U.S. Const. amend. V; *see Stevenson v. State*, 499 S.W.3d 842, 850 (Tex. Crim. App. 2016); *Speights v. State*, 464 S.W.3d 719, 722 (Tex. Crim. App. 2015); *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014); *Loving v. State*, 401 S.W.3d 642, 646 (Tex. Crim. App. 2013); *Ex parte Milner*, 394 S.W.3d 502, 506 (Tex. Crim. App. 2013). "[The] threshold question . . . is whether the defendant is being punished or prosecuted for the 'same offense.'" *State v. Perez*, 947 S.W.2d 268, 270 (Tex. Crim. App. 1997) (citing *United States v. Dixon*, 509 U.S. 688, 696 (1993)); *State v. Donaldson*, — S.W.3d —, No. 03-16-00085-CR, 2017 WL 1508662, at *3 (Tex. App.—Austin Apr. 20, 2017, no pet.). The Court of Criminal Appeals has explained that there are two relevant inquiries in a double jeopardy analysis when considering whether the offenses at issue are "the same": legal sameness and factual sameness. *Ex parte Castillo*, 469 S.W.3d 165, 172 (Tex. Crim. App. 2015); *see Aekins v. State*, 447 S.W.3d 270, 283 (Tex. Crim. App. 2014) (Keller, P.J., concurring) ("For offenses to be the

21

'same' for double-jeopardy purposes, they must be the same both in 'law' and in 'fact.'"). "The legal-sameness inquiry depends on only the pleadings and statutory law—not the record—to ascertain whether two offenses are the same." *Castillo*, 469 S.W.3d at 172. If the offenses are legally the same, the next step is to determine whether the offenses are factually the same. *Id.* at 169; *Ex parte Benson*, 459 S.W.3d 67, 72 (Tex. Crim. App. 2015). "The factual-sameness inquiry requires a reviewing court to examine the entire record to determine if the same offenses have been alleged." *Castillo*, 469 S.W.3d at 172. "To prevail on a double jeopardy claim, the claimant must prove both legal sameness and factual sameness." *Id.* at 169.

A multiple punishments double jeopardy claim arises under two scenarios: (1) in the context of lesser included offenses, where the same conduct is punished under both a greater and a lesser included offense, and (2) when the same conduct is punished under two distinct statutes where the legislature intended for the conduct to be punished only once. *Garfias*, 424 S.W.3d at 58.

Count 1 of the indictment in this case, which charged appellant with first degree aggravated family violence assault, alleged that appellant intentionally, knowingly, or recklessly caused serious bodily injury to Smith while using a deadly weapon. *See* Tex. Penal Code § 22.01(b)(1). Count 2, which charged appellant with second degree aggravated family violence assault, alleged that appellant intentionally, knowingly, or recklessly caused bodily injury to Smith while using a deadly weapon. *See id.* §§ 22.01(a)(1), 22.02(a)(2). Count 3, which charged appellant with second degree aggravated family violence assault, alleged that appellant intentionally, knowingly, or recklessly caused serious bodily injury to Smith. *See id.* §§ 22.01(a)(1), 22.02(a)(1). All three counts alleged that Smith was a person with whom appellant had a relationship described

22

by the Family Code—that is, she was a member of appellant's family or household or was a person with whom he had a dating relationship. *See* Tex. Fam. Code §§ 71.0021(b), 71.003, 71.005. The record reflects that all three counts were based on the same conduct: appellant's beating and strangulation attack of Smith at the horse pen on March 3, 2015.[3]

The Count 2 charge of second degree aggravated family violence assault differed from the Count 1 charge of first degree aggravated family violence assault only in that it alleged a lesser degree of injury (bodily injury rather than serious bodily injury). Therefore, as pled in this indictment, the offense of second degree aggravated family violence assault in Count 2 is a lesser included offense of the first degree aggravated family violence assault in Count 1. *See* Tex. Code Crim. Proc. art. 37.09(2) (providing that offense is lesser included offense if "it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person").

---

[3] Count 1 of the amended indictment alleged that appellant caused serious bodily injury to Smith

> by striking the said Stacy Smith with Robert Isreal's hand; and by seizing Stacy Smith on and about her throat and neck with Robert Isreal's hands; and by shaking Stacy Smith on and about her throat and neck and head with Robert Isreal's hands; and by striking the head of Stacy Smith on an object, to-wit: the ground; [and] by seizing Stacy Smith on and about the head and hair with Robert Isreal's hand and causing her head to strike an object, to-wit: the ground; and by dragging Stacy Smith, causing her body and legs to contact the ground.

Count 2 contained the same factual description of how appellant caused bodily injury to Smith except that the dragging allegation stated that appellant caused Smith's body and legs to contact "the asphalt" rather than "the ground." Similarly, the factual descriptions in Count 3 were the same as those in Count 1 except that the allegation that appellant caused serious bodily injury by striking Smith's head on an object stated that the object was "the asphalt" rather than "the ground."

Based on this discrepancy, the State suggests that "the counts contain slightly different allegations regarding appellant's manner and means of committing the three aggravated assaults." We disagree, as asphalt is merely a specific description of the type of ground struck or contacted.

The Count 3 charge of second degree aggravated family violence assault differed from the Count 1 charge of first degree aggravated family violence assault only in that it did not require proof of a deadly weapon. Thus, as pled in this indictment, the offense of second degree aggravated family violence assault in Count 3 is a lesser included offense of the first degree aggravated family violence assault in Count 1. *See id.* art. 37.09(1) (providing that offense is lesser included offense if "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged"). Consequently, two of the three offenses are lesser included offenses of the other. *See Denton*, 399 S.W.3d at 545 (describing lesser included offense variation of multiple punishments claim as one where "the same conduct is punished twice—once for the basic conduct and a second time for that conduct plus more").

Turning to a units analysis, when the charged offenses at issue are codified in a single statutory provision—as they are in this case—we determine legal sameness by conducting a units-of-prosecution analysis. *Stevenson*, 499 S.W.3d at 850; *Benson*, 459 S.W.3d at 71; *see Garfias*, 424 S.W.3d at 58 ("[A] 'units' analysis is employed when the offenses are alternative means of committing the same statutory offense."); *Loving*, 401 S.W.3d at 645 ("In this case, the proper analysis is to determine whether the Legislature intended for the separate statutory subsections in a single statute to constitute distinct offenses. In other words, we must determine the allowable unit of prosecution."); *Harris v. State*, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011) ("In determining whether a particular course of conduct involves one or more distinct offenses under a single statute, we must ascertain the 'allowable unit of prosecution' under the statute."); *see also Aekins*, 447 S.W.3d at 284 (Keller, P.J., concurring) ("If only a single statutory provision is at issue, then the

24

elements analysis ends in the defendant's favor, and we move on to a units analysis."). A units analysis considers: (1) what the allowable unit of prosecution is, based on the statute's construction and ascertaining the gravamen of the offense, and (2) how many units have been shown by examining the record, which may include evidence presented at trial. *Stevenson*, 499 S.W.3d at 850; *Castillo*, 469 S.W.3d at 169; *Benson*, 459 S.W.3d at 73–74.

The Court of Criminal Appeals has held that the allowable unit of prosecution for assaultive offenses is each victim. *Castillo*, 469 S.W.3d at 172; *Garfias*, 424 S.W.3d at 60; *Ex parte Hawkins*, 6 S.W.3d 554, 560 (Tex. Crim. App. 1999); *see Shelby*, 448 S.W.3d at 439. The three offenses in this case all related to the same victim, Stacy Smith, and were based on the same assaultive conduct, appellant's beating and strangulation attack of Smith on March 3rd. Thus, all three counts allege the same unit of prosecution: Stacy Smith.

Because two of the aggravated family violence assault offenses are lesser included offenses of the other and because all three aggravated family violence assaults were based on the same unit of prosecution, we conclude that the aggravated family violence assault offenses in Counts 2 and 3 are legally the same as the aggravated family violence assault in Count 1.

Because we have determined that the offenses are legally the same, the next step is to determine whether the offenses are factually the same. *See Castillo*, 469 S.W.3d at 169; *Benson*, 459 S.W.3d at 72. "We determine factual sameness by determining the allowable unit of prosecution and reviewing the trial record to establish how many units have been shown." *Castillo*, 469 S.W.3d

25

at 169.  All three counts were submitted to the jury as charged in the amended indictment.[4]  As already noted in our legal-sameness analysis, all three of appellant's aggravated family violence convictions are based on the same unit of prosecution:  Stacy Smith.  Further, as already noted, the charged conduct was based on the same assaultive incident:  the beating and strangulation attack of Smith at the horse pen on March 3rd.[5]  A review of the record—including the evidence at trial—demonstrates that only one unit of prosecution was shown and that the Count 2 and 3 offenses are lesser included offenses of the Count 1 offense.  Thus, we conclude that the aggravated family violence assault offenses in Counts 2 and 3 are factually the same as the aggravated family violence assault offense in Count 1.

Having found that appellant's multiple convictions are for offenses that are legally and factually the same, we conclude that appellant's multiple convictions constitute a double jeopardy violation, clearly apparent on the face of the record, and we sustain appellant's second point of error.

---

[4] The language in the application paragraphs of the jury charge tracked the allegations in the amended indictment except that the paragraphs submitted the factual descriptions of appellant's conduct in the disjunctive rather than the conjunctive.

[5] The State suggests that because the evidence shows that appellant previously assaulted Smith eight months before the charged conduct—"beating" and "choking" her at her home on July 19, 2014—the multiple punishments do not violate double jeopardy.  The State argues that, despite the fact that the parties focused on appellant's conduct at the horse pen on March 3, 2015 as support for the counts charged, the July 2014 assault—which, according to the State, "was not an extraneous offense," *see Rankin v. State*, 953 S.W.2d 740, 741 (Tex. Crim. App. 1996) (defining extraneous offense as any act of misconduct, whether resulting in prosecution or not, that is not shown in charging instrument)—could support one of the convictions because the counts of the indictment alleged "on or about" March 3, 2015.  However, we note that the State gave notice of the July 2014 assault in its pretrial notice of extraneous offenses.  The State cannot now suggest that the prior assault was not an extraneous offense but instead a primary offense charged by the factual allegations describing appellant's March 3rd conduct.

The remedy for a double jeopardy violation in the multiple punishments context is to affirm the conviction for the most serious offense and vacate the other convictions. *Duran v. State*, 492 S.W.3d 741, 745 (Tex. Crim. App. 2016); *Shelby*, 448 S.W.3d at 440; *Denton*, 399 S.W.3d at 547; *Bigon v. State*, 252 S.W.3d 360, 372 (Tex. Crim. App. 2008). The most serious offense is the offense of conviction for which the greatest sentence was assessed. *Shelby*, 448 S.W.3d at 440; *Denton*, 399 S.W.3d at 547; *Ex parte Cavazos*, 203 S.W.3d 333, 338 (Tex. Crim. App. 2006).

Here, appellant was sentenced to 50 years' imprisonment for the Count 1 first degree aggravated family violence assault, 5 years' imprisonment for the Count 2 second degree aggravated family violence assault, and 5 years' imprisonment for the Count 3 second degree aggravated family violence assault. The Count 1 first degree aggravated family violence assault is the most serious offense. We therefore retain appellant's conviction for first degree aggravated family violence assault in Count 1 and vacate his convictions for second degree aggravated family violence assault in Counts 2 and 3.

**CONCLUSION**

We conclude that the jury charge error did not egregiously harm appellant but that two of appellant's convictions for aggravated family violence assault violate the Double Jeopardy Clause. Accordingly, we affirm the trial court's judgment of conviction for first degree aggravated family violence assault in Count 1 and vacate the trial court's judgments of conviction for second degree aggravated family violence assault in Counts 2 and 3.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Count 1:  Affirmed on Motion for Rehearing

Counts 2 and 3:  Vacated on Motion for Rehearing

Filed:   October 26, 2018

Do Not Publish